Argued March 7, affirmed March 19, 1918.

ASHLEY & RUMELIN v. LANCE.*

(171 Pac. 561.)

**Chattel Mortgages—Rights of Mortgagee.**

1. Under chattel mortgage authorizing private sale, the mortgagee may, on breach, take possession of the property, sell it as agreed upon, pay the costs, and apply the remainder of the proceeds to the diminution of the mortgage debt; and, if there is a deficiency,

---

*On the effect of statutory provision abolishing deficiency judgments for mortgage debts, see note in 45 L. R. A. (N. S.) 247.
                                                        REPORTER.

he may maintain an action at law against the mortgagor or his sureties.

[As to title and rights of holder of chattel mortgage after condition broken, see note in 96 Am. St. Rep. 682.]

**Pleading—Reply—Departure.**

2. Where defendants gave chattel mortgage and note, and plaintiffs sued on the note, and the answer alleged a sale of the property under the power in the mortgage, and the reply set forth in detail the money expended in securing a release of the property from liens, the cost of the sale, and the remainder indorsed on the note, there was no departure from the allegations in the complaint, which stated sufficient facts to constitute a cause of action and to render evidence admissible to sustain the allegations.

**Appeal and Error—Harmless Error.**

3. Error in permitting the witness to say what was due on a note in suit was harmless, where the note itself showed the amount, since no prejudice could have resulted.

**Trial—Comment of Court.**

4. It was not error for the court to ask, "Why take up so much time? This matter is immaterial," and, further, "Why not try the case in an orderly way?" since counsel's knowledge of the law was not challenged nor his motive impugned.

**Evidence—Declarations—Reasons for Action.**

5. In an action on a note, plaintiff could testify what reasons a surety gave for indorsing the note.

From Multnomah: GEORGE N. DAVIS, Judge.

Department 2.   This is an action by Ashley & Rumelin against F. A. Lance, Charles Weeks, Herman Massman and George W. Rahskoff, to recover money.   The complaint stated in effect that at all the times mentioned therein the plaintiff was and is an Oregon corporation; that on August 1, 1912, and prior thereto, the V. D. Smith Fuel Company was a like corporation, on which day it executed to plaintiff a promissory note for $2,400, payable on demand, with interest thereon until paid, at the rate of 10 per cent per annum, of which note plaintiff is the owner and holder; that the defendants, for a valuable consideration, by a written indorsement upon the note, guaranteed its payment and waived protest, demand and notice of nonpayment; that prior to the commencement of this action demand

was made upon each defendant to liquidate the note, no part of which has been paid except $1,230, and the interest to October 11, 1914; and that $125 is a reasonable sum to be allowed as attorney's fees, as provided for in the note for maintaining this action.   The prayer is for judgment against each defendant for $1,170 with interest thereon at 10 per cent per annum from October 11, 1914, the further sum of $125 as attorney's fees, and the costs and disbursements of the action.

The defendant Lance alone answering, denied that the defendants guaranteed the payment of the note, or waived protest, demand, or notice of nonpayment, but admitted he indorsed the note; denied that any demand had been made for its payment, or that no other sum had been paid thereon than alleged in the complaint; and denied that $125 or any other sum was reasonable as attorney's fees.

For a separate defense it is substantially alleged that Lance indorsed the note which had no writing on the back thereof except his signature; that if the note now contains any guaranty or waiver, such memorandum was placed thereon without his knowledge or consent after he signed the instrument; and that no demand or notice of nonpayment had ever been served upon him.   For a further defense it is briefly alleged that the V. D. Smith Fuel Company executed the promissory note mentioned; that to secure the payment thereof such corporation also executed to the plaintiff a chattel mortgage of 17 head of horses and other property, particularly describing it; that about April 1, 1914, the mortgagor delivered all such property to the plaintiff, which accepted it in full payment and discharge of the note; and that by reason thereof such obligation was fully liquidated.

The material averments of new matter in the answer were put in issue by the reply, which alleged generally that about April ——, 1913, Lance purchased all the personal property described in his answer, and thereupon, for a valuable consideration, executed to the plaintiff a second chattel mortgage thereof, to secure the payment of the Fuel Company's promissory note, referred to in the complaint; that the latter mortgage contained a clause which provided that if any attempt was made to sell such property, or if it should be attached or levied upon under any claim or demand, the note should immediately become due and payable, and thereupon the plaintiff was empowered to sell the property, or any part thereof, to satisfy such note; that about December ——, 1913, the plaintiff learned that the horses so mortgaged were advertised for sale to satisfy a claim of $101.95 for their care, and that another like claim of $42 was made and such stock was liable to be sold for the payment thereof, and in order to secure the release of the horses, the plaintiff was compelled to pay the respective sums demanded, and also to expend the further sum of $57 in caring for such animals, whereupon the plaintiff foreclosed its mortgage, realizing from a sale of the personal property, after deducting such payments, and the costs and expenses which were incurred, $1,260, which was indorsed on the promissory note, thereby leaving $1,170, with interest thereon at the rate of 10 per cent per annum from October 11, 1914, no part of which has been paid. The cause was tried and a verdict returned for the amount of the promissory note as demanded, and $100 as attorney's fees, and from the judgment rendered thereon, the defendant Lance appeals.

                                             AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. G. E. Hamaker.*

For respondent there was a brief and an oral argument by *Mr. Walter S. Hufford.*

MOORE, J.—A witness for the plaintiff having identified the promissory note referred to, the appellant's counsel objected to the giving of any further testimony on the grounds that the complaint did not state facts sufficient to constitute a cause of action, because no mention was made in the initiatory pleading of any deficiency in respect to an application of the proceeds of the mortgaged property to the debt thereby secured, and that the reply constitutes a departure. In support of the legal principle involved reliance is had upon the case of *Rein* v. *Callaway,* 7 Idaho, 634 (65 Pac. 63), where it was held that if a mortgagee seized the mortgaged personal property and sold it at private sale under a stipulation in the mortgage authorizing him to do so, he could not maintain an action on the note for the remainder due on the mortgage debt. In deciding that case Mr. Justice SULLIVAN, speaking for the court, says:

"In this state, as in the State of California, the mortgaged property becomes the primary security, and the personal obligation of the mortgagor a secondary one. The mortgagor, under our statutes, is personally liable only after foreclosure, and then only for the balance shown to be due by the return of the sheriff, unless it is made to appear that the property has been destroyed or otherwise become valueless without the fault of the mortgagee."

Further in the opinion it is observed:

"A mortgagee cannot waive his security and sue upon the debt."

88 Or.—8

Our statute, regulating the foreclosure of chattel mortgages, reads:

"Whenever in any mortgage of goods and chattels the parties to such mortgage shall have provided the manner in which such mortgage may be foreclosed, such mortgage, upon breach of the conditions thereof, may be foreclosed in the manner therein provided, and not otherwise; and if in any such mortgage the manner in which the same may be foreclosed shall not be provided, then upon breach of the conditions thereof, in case the consideration of such mortgage shall not exceed the sum of $500, the same may be foreclosed, and the mortgaged property sold by the sheriff or any constable of the county in which such mortgage has been filed, upon the written request of the mortgagee, his agent, or attorney, upon such notice, and in the manner provided by law for the sale of personal property upon execution; and if the consideration of such mortgage shall exceed the sum of $500, the same may be foreclosed by an action at law in the Circuit Court of the county in which such mortgage may have been filed": Section 7411, L. O. L.

There were received in evidence at the trial the original chattel mortgages executed to the plaintiff by the V. D. Smith Fuel Company, August 1, 1912, by V. D. Smith, its president, and the defendant F. A. Lance as its Secretary, to secure the payment of the promissory note for $2400, and by the defendants Charles Weeks and H. Massman May 8, 1913, for the same purpose. These mortgages contain a clause which so far as important herein reads:

"To Have and to Hold the said goods and chattels unto the said party of the second part, (plaintiff herein) or its assigns forever. Provided, nevertheless, and these presents are on the express condition, that if the said party of the first part, (the mortgagor in the first mortgage and the mortgagors in the second) or its assigns, shall well and truly pay unto the

said party of the second part, or its assigns, the sum of twenty-four hundred dollars, and interest thereon at the rate of ten per cent per annum, in accordance with the terms of a certain promissory note, of which the following is substantially a copy (setting forth a duplicate of the negotiable instrument), then these presents shall be void. But in case default shall be made in the payment of the principal sum or interest, * * or if any claims, charges or demands which can be made prior liens to this mortgage upon said property, are not paid or discharged at maturity, or if said property is attached or levied upon, taken possession of, or detained by any person other than the mortgagee, for any cause, or is removed or attempted to be removed by any one from the aforesaid premises or be sold, transferred or assigned or attempted to be sold, transferred or assigned, then said promissory note shall, at once, become due and payable, and it shall and may be lawful for, and the said party of the first part does hereby authorize and empower the party of the second part or his assigns with the aid and assistance of any person or persons, to enter the aforesaid premises and such other place or places as the goods and chattels are, or may be placed, and take or carry away the said goods and chattels, and sell or dispose of the same at private sale with or without notice to the mortgagor, or may sell the same at public auction upon giving one week's notice of the said sale in a newspaper of general circulation published in said County (Multnomah) and State, and out of the money arising therefrom, to retain and pay the said sum above mentioned, and interest as aforesaid, and all charges touching the same, and reasonable counsel fees * * rendering the overplus, if any, unto the said party of the first part.''

Upon a breach of either of these conditions, the plaintiff under the provisions of the statute hereinbefore quoted, was empowered and legally authorized to take possession of the mortgaged property and to sell sufficient thereof to pay the mortgage debt, or if

as in this instance the property was inadequate for that purpose to sell the entire chattels and from the proceeds arising therefrom to pay the costs and expenses incident to the sale and to indorse the remainder upon the promissory note.

A text-writer discussing this subject remarks:

"A sale under a power contained in the mortgage, and purchase by the mortgagee of the mortgaged property, without a resort to court, does not bar the mortgagee's right to look to the mortgagor or other securities for a deficiency, and is not an extinguishment of the debt": Cobbey, Chat. Mort., § 988.

To the same effect see, also, Griffin and Curtis, Chat. Mort., p. 160.

Another author observes:

"In some jurisdictions, by statute, there can be but one action to recover a debt secured by a chattel mortgage; and it is held that the mortgagee cannot waive the security and sue for the debt, but must bring his action of foreclosure": 11 C. J. 746, note 20.

In support of the text, decisions are cited from the Supreme Courts of California, Idaho and Montana. The statute thus referred to was first enacted by the legislative assembly of California and subsequently adopted by the law-making bodies of the other states. The enactment reads:

"There shall be but one action for the recovery of any debt, or the enforcement of any rights, secured by mortgage upon real estate or personal property, which action shall be in accordance with the provisions of this chapter,"

referring to the part of the Code containing such statute: *Largey* v. *Chapman,* 18 Mont. 563 (46 Pac. 808); *Rein* v. *Callaway,* 7 Idaho, 634 (65 Pac. 63). From the care exercised by the editors of Corpus Juris in

collating in notes lists of cases sustaining every legal principle set forth in the text, it is fair to infer that if the statute mentioned had been adopted in any other state, reference to decisions upon the subject would have been made in that great work, which is such a valuable contribution to universal law.

1. Whether or not such enactment has been adopted in any other state is unimportant, for our statute does not contain such a provision. In *Page* v. *Ford,* 65 Or. 450 (131 Pac. 1013, Ann. Cas. 1915A, 1048, 45 L. R. A. (N. S.) 247), it was ruled that the holder of a real estate mortgage might legally waive his lien and maintain an action at law upon the promissory note, which formed the basis of the security and obtain a personal judgment against the mortgagor. The conclusion thus reached shows that the rule prevailing in California, Idaho and Montana, is not controlling in Oregon. Our statute, regulating the foreclosure of chattel mortgages, does not contain a clause which is found in the laws of the states mentioned. When, therefore, a chattel mortgage of property in this state includes a clause similar in import to that hereinbefore quoted, the mortgagee may, upon a breach of the conditions, take possession of the hypothecated property, sell it within a reasonable time in the manner agreed upon, pay the costs and expenses necessarily incurred, apply the remainder of the proceeds of the sale to the diminution of the mortgage debt, which, if not fully discharged, entitles him to maintain an action at law against the mortgagor and any other person who is personally liable to recover the balance due on the obligation.

2. In the case at bar the cause of action set forth in the complaint was predicated upon the promissory note. The answer alleged *inter alia* a sale of the

personal property under an exercise of power specified in the chattel mortgage, thereby permitting the defendant to show if he could, that the sale had not been seasonably made, or fairly conducted, or that a greater sum of money had been received than was admitted by the plaintiff and hence the proper credit was not made upon the promissory note. The reply put in issue only the averments of new matter in the answer and set forth in detail the sums of money expended in securing a release of the mortgaged property from the claims of lien thereon, the payments made in conducting the sale, and the remainder which was indorsed upon the promissory note, and in doing so there was no departure from the allegations in the complaint. That pleading, therefore, stated facts sufficient to constitute a cause of action and no error was committed in receiving evidence tending to substantiate the averments of the complaint.

3. A witness having identified the promissory note sued on, was asked by plaintiffs' counsel: "What amount, if any, is due upon this note, Mr. Ashley?" The defendants' counsel objected to the inquiry on the ground that the note afforded the best evidence. The objection was overruled, however, and an exception allowed. The witness then answered in effect: "There is due $1,170 with interest at ten per cent per annum from October 11, 1914," and it is contended that an error was thereby committed. Though the objection thus made was well taken, it is impossible to see how the defendant was prejudiced in any manner by the answer which was given, and for that reason the assignment is deemed immaterial.

4. The court, during the trial, referring to the action of the defendants' counsel in questioning a witness, said: "Why take up so much time with this—it is

immaterial whether he told him or not—it doesn't make any difference whether he told him or not." Upon the cross-examination of one of plaintiff's witnesses the court further said to defendant's counsel:

"I don't want to interrupt you, * * but it seems to me you are going clear outside of the direct examination in this case. You are going into this and trying your own case. There was nothing said about this in chief. Why not try the case in an orderly way?"

Exceptions having been taken to the language so employed, it is maintained that errors were committed in making use of the remarks thus quoted. The word "orderly," which in the brief of defendants' counsel is the only part of the quoted language that is seriously challenged, was evidently intended to call attention to the general rule of evidence that the cross-examination of a witness should be limited to a reasonable review of his testimony in chief. In the hasty trial of causes, attorneys who are learned in the law, sometimes in the excitement incident to the importance of the issues involved, overlook these elementary principles and when this occurs it becomes the duty of the court promptly to call attention to the departure from the prescribed rule. In doing so in this instance, the counsel's knowledge of the law was not challenged, nor his motive impugned, and hence no error was committed in these particulars.

5. One of plaintiffs' witnesses, on rebuttal, was directed:

"Tell the jury, Mr. Ashley, what reason there was, if any, for Mr. Lance and Mr. Rahskoff indorsing this note."

An objection to the command made by defendants' counsel was overruled and an exception taken, and it

is maintained that an error was thereby committed. It was proper for the witness to explain to the jury the reasons given by the defendants for indorsing the promissory note sued upon, and in doing so no error was committed.

Exceptions were taken by defendants' counsel to some of the instructions given, and to the court's refusal to charge as requested. Without setting forth any of these matters a careful examination thereof convinces us that no error was committed in any of these particulars. The judgment should, therefore, be affirmed and it is so ordered.          AFFIRMED.

McBRIDE, C. J., McCAMANT and BEAN, JJ., concur.