APPLIANCE BUYERS CREDIT CORPORATION v. JOSEPH HERBERT MASON, GEORGE D. LEWIS AND ROSALIE S. LEWIS.

(Filed 1 March, 1967.)

**1. Chattel Mortgages and Conditional Sales § 17—**

Provision in a conditional sales contract for private sale of the chattel after default and repossession, is not contrary to statute or public policy of this State, and is valid; nevertheless, the seller or his assignee must act promptly and in good faith and use every reasonable means to obtain the full value of the property.

**2. Same;  Chattel Mortgages and Conditional Sales § 18—**

In an action by the mortgagee or his assignee to obtain deficiency judgment after repossession and private sale of the property pursuant to the terms of the agreement, the sale not being to the mortgagee or one in privity with him, the burden rests upon the mortgagor to prove as matters of defense his allegations that the property was not sold for its fair market value, that the property was returned to the mortgagee in full satisfaction of the debt, or that the value of the chattel then exceeded the debt, and plaintiff may not be nonsuited on such affirmative defenses.

APPEAL by plaintiff from *Mintz, J.,* October 1966 Session of CARTERET.

Action under G.S. 45-21.38 to recover a deficiency judgment in the amount of $2,237.39, with interest from October 15, 1963, for the balance due on the purchase price of personal property sold under a conditional sales agreement. Plaintiff alleged and offered evidence tending to show:

CREDIT CORP. *v.* MASON.

Defendant Mason, on September 27, 1962, bought from Parrett Manufacturing Company eight Nassau golf carts. For the unpaid balance of the purchase price he executed a note, secured by a conditional sales contract, in the amount of $5,609.39, payable, on a seasonal basis, in eleven installments. The contract provided, *inter alia,* that if the buyer defaulted in the payment of any installments, seller might "thereupon sell said merchandise at public or private sale and apply the proceeds, after deducting expenses and liens, to the payment of said indebtedness, and pay the surplus, if any, to Buyer." In case of a deficiency, buyer agreed to pay the same at once.

For the purpose of inducing Parrett Manufacturing Company to sell the golf carts to Mason, defendants Lewis executed and delivered to Parrett a separate instrument in which they unconditionally guaranteed that Mason would pay the note and perform all obligations "arising out of or in connection with the foregoing purchase of equipment." They further consented that the conditional sales contract might be amended or superseded and that indulgences might be granted Mason without affecting their liability under the guaranty. Mason also signed the guaranty along with defendants Lewis.

Parrett negotiated the note and assigned the conditional sales agreement to plaintiff before the first installment became due. After keeping the golf carts a little over a year and making only three payments of $470.00 each, or a total of $1,410.00, Mason voluntarily surrendered the carts to plaintiff. On October 15, 1963, he signed a letter to plaintiff in which he acknowledged his default and surrender of the carts, and in which he. waived "advertisement and sale as required by law."

Plaintiff sold the carts at private sale to B & H Auction & Salvage Company for $2,045.00. After deducting moving and storage charges of $75.00 and the expense of the sale, $48.00, plaintiff applied the net proceeds of the sale, $1,922.00, to the note, leaving a balance due of $2,277.39. Plaintiff's demands that defendants pay this balance have been ignored.

At the close of plaintiff's evidence, defendants' motion for nonsuit was allowed, and plaintiff appealed.

*Otho L. Graham, Jr. and Harvey Hamilton, Jr., for plaintiff.*
*Wheatly & Bennett for defendants.*

SHARP, J. Defendants' motion for nonsuit was based upon the premise that a deficiency judgment under G.S. 45-21.38 cannot be predicated upon a private sale even though the conditional sales contract under which the mortgaged personalty was sold provided for such a sale. This proposition was decided adversely to defendants'

contention in *Financial Services Corporation v. Welborn. ante,* 563, 153 S.E. 2d 7, where it was held that a stipulation in a chattel mortgage or conditional sales agreement authorizing the creditor to sell the personal property described therein at private sale violates no statute or public policy of this State. Such an authorization, however, does not relieve the mortgagee, in taking possession of and selling the property, from the duty of acting in the utmost good faith. "In selling the property at private sale for the satisfaction of his mortgage debt, it (is) his duty to sell it at a fair and reasonable valuation, and failing to do so, he (becomes) liable to the mortgagor for such failure." *Zadek v. Burnett,* 176 Ala. 80, 57 So. 447. The conditional vendor, or his assignee who sells at a private sale, owes the duty to the conditional vendee "to deal justly with his equitable right and to use diligence to obtain the best price available for the property in making such a sale." *Dearborn Motors C. Corp. v. Hinton,* 221 Miss. 643, 74 So. 2d 739. *Accord, Universal C. I. T. Credit Corp. v. Byers,* 299 S.W. 2d 559 (Mo. Ct. App. 1957), 14 C.J.S., Chattel Mortgages § 381 (1939). "A mortgagee who sells at private sale is responsible and accountable for at least the fair and reasonable value of the property. . . ." 14 C.J.S., Chattel Mortgages § 393 (1939).

Plaintiff's evidence tends to show that the "basic" sales price of the eight golf carts was $5,615.00 on September 27, 1962; that the "time price differential" was $555.89; and that sometime between October 15, 1963, and September 15, 1965, plaintiff sold the carts to B & H Auction & Salvage Company for $2,045.00. Whether this latter sum represented the fair value of the property at the time Mason surrendered possession of the carts, the evidence does not disclose. The question presented by this appeal, therefore, is this: When a mortgagee takes possession of mortgaged property under the provisions of a chattel mortgage or conditional sales agreement, sells it at private sale under a power therein given, and when thereafter, in his suit for a deficiency judgment, the mortgagor alleges that the property was not sold for its fair market value, upon whom is the burden of proving that allegation? The answer is that, where the sale is to a person other than the mortgagee or one in privity with him, the burden rests upon the mortgagor. *Pryor v. Associates Discount Corp.,* 191 So. 2d 234 (Ala. Ct. App. 1966); *Zadek v. Burnett, supra; Universal C.I.T. Credit Corp. v. Byers, supra; Waltner v. Smith,* 274 S.W. 526 (Mo. Ct. App. 1925); *Bird v. Davis,* 14 N.J. Eq. 467; *Harrison v. Hall,* 239 N.Y. 51, 145 N.E. 737; *Credit Corp. v. Frazier,* 118 Ohio App. 429, 192 N.E. 2d 506; *First Discount Corporation v. Daken,* 75 Ohio App. 33, 60 N.E. 2d 711; *Ashley & Rumelin v. Lance,* 88 Ore. 109, 171 Pac. 561; *Tacker v. Mitchell,* 3 Tenn. App. 495. *Cf.*

*Harbour-Longmire Co. v. Reid,* 124 Okla. 77, 79, 254 Pac. 29, 30 (which contains this inconsistent statement as *dictum:* "Where the rights of third persons or junior or inferior lienholders intervene, and the sale is attacked, the burden is upon the mortgagee to show that the property sold for its fair market value and . . . the only remedy the aggrieved party has is in cases *where he can show* that the property was not sold for its reasonable market value.") (Italics ours.) and *Kolbo v. Blair,* 379 S.W. 2d 125 (Tex. Civ. App. 1964) (where the mortgagees sold to themselves).

The rule has been variously stated as follows: "The mortgagee has the burden of proving such a breach of the mortgage as will justify the sale; but the burden of proving matters in defense, such as fraud in the foreclosure and sale of the mortgaged property by the mortgagee, *or the value of the chattels* possessed by the mortgagee, is on the mortgagor." (Emphasis added.) 14 C.J.S., Chattel Mortgages § 390 (1939). "The burden of proving that the mortgagee failed to use reasonable diligence in securing a fair price, where the sale is to a person other than the mortgagee or a person in privity with him, and that he therefore acted in bad faith, is upon the person attacking the sale." 15 Am. Jur. 2d, Chattel Mortgages § 223 (1964). If the mortgagor can prove that the mortgaged goods "were sold unfairly, or at an under price, he will be permitted to do so, and will be allowed their full value." Jones on Chattel Mortgages § 708 (5th Ed. 1908). "The mortgagor has the burden of pleading and proving that the property was sold for less than its reasonable value." *Pryor v. Associates Discount Corp., supra. Accord, Zadek v. Burnett, supra; Harrison v. Hall, supra.* "The burden of proof . . . is upon the mortgagor to show that the mortgagee or his assignee failed to act in good faith and did not use every reasonable means to obtain the full value of the mortgaged property." *Universal C. I. T. Credit Corp. v. Byers, supra.*

In *Ashley & Rumelin v. Lance, supra,* plaintiff sought a deficiency judgment after a private sale of property under a power contained in a chattel mortgage. The answer, the court said, permitted defendant "to show, if he could, that the sale had not been seasonably made, or fairly conducted, or that a greater sum of money had been received than was admitted by the plaintiff, and hence the proper credit was not made on the promissory note." *Accord, Credit Corp. v. Frazier, supra.*

In *Waltner v. Smith, supra* at 527, the court said: "The burden of showing that plaintiff (mortgagee) failed to act in good faith and did not use every reasonable means to obtain the full value of the mortgaged property was in the defendant (mortgagor)."

In their answer, defendants have alleged that plaintiff accepted

the return of the carts in full satisfaction of their debt and that the value of the carts then exceeded the debt. Either of these allegations, if proven, is a defense which will defeat plaintiff's action. As to each, however, the burden of proof rests upon defendants.

The judgment of nonsuit was, therefore, erroneous.

Reversed.