RAMSEY et al., Appellants,

v.

ERNOKO, INC. et al.; Society Bank, f.k.a. Trustcorp, Inc., Appellee.

[Cite as *Ramsey v. Ernoko, Inc.* (1991), 74 Ohio App.3d 749.]

Court of Appeals of Ohio,
Lucas County.

No. L–90–258.

Decided July 12, 1991.

*V. Robert Candiello,* for appellants.

*Mark R. Tantari,* for appellee.

*Per Curiam.*

This is an appeal by junior secured creditors who claim that the primary secured creditor acted wrongfully in the sale of repossessed collateral in which all parties claimed an interest. The Lucas County Court of Common Pleas found that the junior creditors were not entitled to notice of the sale and that the junior creditors failed to prove that the sale was not commercially reasonable. We affirm.

In 1986 Ernoko, Inc. purchased the equipment, accounts receivable and inventory of two Toledo area physical fitness centers. Appellee Society Bank, formerly known as Trustcorp, Inc., in part financed these purchases by lending Ernoko, Inc. $75,000 of the $125,000 purchase price for a Toledo, Ohio center and $100,000 of the $150,000 purchase price for a Sylvania, Ohio center. Appellant Douglas Ramsey is president and sole shareholder of appellant Sequel, Inc., formerly known as Nautilus South Fitness Center of Toledo, Inc., which sold Ernoko, Inc. the Toledo Fitness Center and loaned Ernoko, Inc. the remaining $50,000 of its purchase price. Both appellants and appellee took security interests in the equipment, accounts receivable and inventory of both fitness centers to secure their respective notes. Both duly perfected their

security interests by appropriate UCC filings. Appellants' security interest was subordinate and junior to appellee's security interest.

Early in 1988, Ernoko, Inc. defaulted on its loans with both appellants and appellee. On March 10, 1988, appellee conducted a UCC search on Ernoko, Inc. which revealed appellants' security interest. On April 13, 1988, appellants wrote counsel for Ernoko, Inc. advising him that Ernoko, Inc. was in default and appellants were making demand on their note. The following day counsel for Ernoko, Inc. replied to appellants' letter, acknowledged the debt as due and owing, and commented that the debt was secured, but subordinate to appellee's security interest. A copy of this letter was sent to appellee in care of its commercial loan officer. Appellee concedes it probably received this letter prior to April 19, 1988.

On April 19, 1988, Ernoko, Inc. executed a repossession agreement with appellee and surrendered all of its collateral. On June 16, 1988, appellee sold a portion of Ernoko, Inc.'s repossessed equipment at a private sale for $15,000. On August 3, 1988, appellee sold the remainder of Ernoko, Inc.'s equipment at private sale for $65,000. Appellee loaned the buyer the purchase money in the second transaction.

At no time prior to April 19, 1988, did appellants provide appellee with written notice of its junior security interest in the Ernoko, Inc. collateral. At no time did appellee notify appellants in writing that it had repossessed Ernoko, Inc.'s collateral and would be selling same.

Appellants brought suit alleging that appellee's failure to notify appellants of the pending sale of Ernoko's collateral violated R.C. 1309.44 through 1309.50 with respect to notice and that appellee's sale of the Ernoko, Inc. collateral was not conducted in a commercially reasonable manner. Appellants alleged that, as the result of appellee's actions, appellants were deprived of the ability to recover the money appellants had loaned to Ernoko, Inc.

The case was submitted to the trial court on stipulated issues and facts. The trial court found that appellee had not violated the notice requirement of R.C. 1309.47(C) (UCC 9–504[C]). The trial court also refused to admit into evidence a letter from appellee's attorney to appellants' attorney stating that Ernoko, Inc.'s collateral had been sold without appraisal. The trial court found this letter was presented without foundation and was beyond the scope of the stipulations. The court then found that appellants had failed to prove that the sale of Ernoko, Inc.'s collateral was not commercially reasonable. Appellants bring this appeal, citing the following assignments of error:

"Assignment of Error No. 1

"The findings, recommendations and order of judgment of the trial court that the appellee, Trustcorp Bank, n/k/a Society Bank fully complied with the provisions of Section 1309.47(C) of the Ohio Revised Code was [*sic*] erroneous, and constituted an improper interpretation of the law.

"Assignment of Error No. 2

"The findings and judgment of the trial court that the appellants failed to sustain their burden of proof on the issue of a sale in a 'commercially reasonable manner' was [*sic*] error, against the manifest weight of the evidence and contrary to law.

"Assignment of Error No. 3

"The trial court erred in finding that there was no stipulated evidence as to the appellee's manner of sale, when in fact there was documentation submitted under stipulation by the parties as to such fact by way of discovery proceedings, which the trial court disallowed as being inadmissible, which is contrary to law and was prejudicial to the rights of the appellants herein."

I

R.C. 1309.47(C) (UCC 9–504) provides that before a secured party may dispose of collateral after default, " * * * notification shall be sent to any other secured party from whom the secured party [disposing of collateral] has received, before sending his notification to the debtor or before the debtor's renunciation of his rights, written notice of a claim of an interest in the collateral."

The parties have stipulated that Ernoko, Inc. renounced its rights to the collateral on April 19, 1988. Prior to April 19, 1988, appellee had actual notice of appellants' security interest through its March 1988 UCC search and through the April 13, 1988 letter from Ernoko's attorney to appellants' attorney, a copy of which was sent to appellee. Prior to sale, appellee did not notify appellants that it intended to dispose of the collateral.

Since appellee had actual knowledge of appellants' interest, appellants contend they were denied their statutory notice of sale. Appellee asserts, and the trial court found, that notice is only required to be sent to another secured party " * * * *from whom* the secured party [disposing of collateral] has received * * * written notice * * *." (Emphasis added.) Since notice of appellants' interest was not received *from the appellants* there was no statutory requirement that appellants be notified of the disposition of the collateral.

Had appellants brought this action two decades ago their position would have been correct. Prior to 1973, R.C. 1309.47(C) required notice of disposi-

tion of collateral to any "person who has a security interest in the collateral and who has duly filed a financing statement * * * or who is known by the secured party to have a security interest in the collateral." See 134 Ohio Laws, Part II, 1434.

The reason for the change in the language of the statute is explained in the official comment accompanying the statute.

"Under the 1962 Text the secured party giving notice of sale had to notify * * * any * * * person known by the secured party to have an interest in the collateral. This meant that the secured party * * * ran the risk that some informal communication by letter, or even orally, might be deemed to have given him knowledge of the interest of that other party. Th[is] burden[ ] * * * [is] greater than the circumstances called for * * *, [t]herefore a change is made requiring notice to persons * * * only if such persons have notified the secured party in writing of their claim * * * before the debtor's renunciation of his rights." R.C. 1309.47, Official Comment to 1972 Change to Model Act. See, also, *Louis Zahn Drug Co. v. Bank of Oak Brook Terrace* (1981), 95 Ill.App.3d 435, 50 Ill.Dec. 959, 420 N.E.2d 276.

The language of the statute is unambiguous and coincides with the code committee's stated reason for including that language in the statute. A secured party need not give notice of the disposition of collateral to another secured party unless the party disposing of the collateral receives written notice from the junior secured party of that party's interest in the collateral. Appellants' first assignment of error is not well taken.

## II

Because they are related, we will discuss appellants' second and third assignments of error together. Appellants have raised the issue of the commercial reasonableness of appellee's sale of Ernoko, Inc.'s collateral. That which is, or is not, commercially reasonable is not defined in the statute. The trial court found guidance as to the meaning of "commercial reasonableness" in R.C. 1309.50(B), which provides:

"The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold, he has sold in a commercially reasonable manner." See,

also, *Ford Motor Credit Co. v. Potts* (1989), 47 Ohio St.3d 97, 101, 548 N.E.2d 223, 226.

■ Armed with such authority, we look to the stipulations which the parties placed before the trial court. From these stipulations we ascertain that in 1986 Ernoko, Inc. purchased the equipment, accounts receivable and inventory of two operating physical fitness centers. In 1988 both centers had closed and appellee had repossessed equipment which was sold for $80,000. Appellee loaned one of the purchasers the full amount necessary to purchase its portion of the repossessed equipment. Beyond this the stipulations are silent.

The parties then proceeded to argue matters not in the stipulations. Appellee suggested in its trial brief that when it sold the collateral it made efforts to solicit and notify persons in the physical fitness industry of the availability of the equipment, its intention to sell the same and its willingness to accept bids. Appellee in argument in its trial brief says that several bids for the equipment were received and the highest bids accepted. Appellants attempted to submit into evidence with their trial brief what on its face appears to be a letter from appellee's attorney admitting that the repossessed collateral had been sold without appellee obtaining a written appraisal of the property.

■ These assertions and arguments are outside the stipulations upon which the trial court made its decision. The trial court properly excluded the alleged letter from appellee's attorney as having been offered without foundation. Additionally; the letter clearly should have been excluded as being outside the scope of the trial stipulations which are in the nature of a special verdict of the jury and may not be amended without the consent of both parties. *Ish v. Crane* (1862), 13 Ohio St. 574, 579–580. Thus, appellants' arguments that the trial court mistakenly excluded the letter are without merit. Accordingly, appellants' third assignment of error is not well taken.

Once the trial court determined that appellee's letter was not admissible, the only evidence before the court were the few facts of the sale described above. We infer from the trial court's decision that based upon those scant facts, neither party proved, by the greater weight of the evidence, that the sale of the collateral was, or was not, commercially reasonable. Thus, the trial court found that appellants had failed to meet their burden of proof that the sale was commercially unreasonable. Appellants counter that, in fact, the burden of proof was not theirs, but was with the appellee to prove that the sale was done in a commercially reasonable manner.

Prior to adoption of the Uniform Commercial Code, the sale of collateral following repossession was lawful so long as such sale was done in good faith.

The burden of proving bad faith rested upon the party alleging it. *Universal CIT Credit Corp. v. Frazier* (1963), 118 Ohio App. 429, 431, 25 O.O.2d 346, 347, 192 N.E.2d 506, 507; *First Discount Corp. v. Daken* (1944), 75 Ohio App. 33, 38, 30 O.O. 319, 322, 60 N.E.2d 711, 714. With the UCC, however, came the concept that a sale of collateral must be commercially reasonable. Annotation, Reasonableness of Disposition of Collateral (1974), 59 A.L.R.3d 369, 372.

■ Although the UCC does not expressly specify which party has the burden of proving that a sale was commercially reasonable, there is authority that the burden must be borne by the secured creditor. *United States v. Willis* (C.A.6, 1979), 593 F.2d 247, 258; *Am. State Bank of Killdeer v. Hewson* (N.D.1987), 411 N.W.2d 57, 61; White & Summers, Uniform Commercial Code (1980) 1122; Annotation, Commercially Reasonable Sale of Collateral (1981), 7 A.L.R.4th 308; Annotation, Reasonableness of Disposition of Collateral, *supra*, at 379; 69 American Jurisprudence 2d (1973) 530, Secured Transactions, Section 623; *Huntington Natl. Bank v. Elkins* (1987), 43 Ohio App.3d 64, 68, 539 N.E.2d 1135, 1140.

There is, however, a very real difference in the above cases and the case at bar. The cases that have held that the burden of proving commercial reasonableness rests with the secured creditor invariably arise where the secured creditor seeks a deficiency judgment against the debtor whose collateral has been sold. In all the cases we have examined the secured creditor was the party who sought affirmative relief. This discovery is consistent with and reflects the "conventional learning that the burden is on the moving party." White & Summers, *supra*.

In the case at bar, the party seeking affirmative relief is a junior secured party challenging the actions of the primary secured party in the selling of collateral in which both hold an interest. In this instance, we find no compelling reason to shift the burden of proof from the parties seeking affirmative relief. Appellants had the opportunity to, and apparently did, conduct discovery. Yet, the product of this discovery was not brought forth. Appellants instead relied upon stipulations to make their assertions that appellee's sale was not commercially reasonable. However, these stipulations provide no insight as to whether the sale was or was not commercially reasonable.

We hold that when the issue of the commercial reasonableness of a sale of collateral is raised, the burden of proof lies with the party seeking the affirmative relief. In the instant case appellants sought affirmative relief and failed to meet their burden of proof. Accordingly, appellants' second assignment of error is not well taken.

On consideration whereof, the court finds that substantial justice has been done the parties complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. It is ordered that appellants pay court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., ABOOD and SHERCK, JJ., concur.